FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   APR 17 2013   ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————— x

VICE MEDIA, INC. and VICE MEDIA CANADA, INC.,   :

                  Plaintiffs,   :

         -against-   :

VICE PRODUCTIONS LLC, VICE ENERGY LLC,   :
PHILIP DADE  and JOSHUA BLACKMAN,

              Defendants.   :

———————————————————— X

13 Civ. 2293 (JS) (AKT)

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION, BROUGHT BY ORDER TO SHOW CAUSE, FOR
A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

SULLIVAN & WORCESTER LLP
Gerry Silver, Esq.
1633 Broadway
New York, NY  10019
(T) (212) 660-3096
(F) (212) 660-3001
gerry.silver@sandw.com

Kimberly B. Herman, Esq.
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, MA 02109
(T) (617) 338-2943
(F) (617) 338-2880
kherman@sandw.com

Attorneys for Plaintiffs

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF FACTS ....................................................................................3

    A.    The Success and Fame of VICE and its VICE® Mark.............................................3

    B.    Defendants' Infringing Conduct. ..........................................................7

ARGUMENT..................................................................................................9

POINT I
VICE IS LIKELY TO SUCCEED ON THE MERITS ...................................................10

    A.    VICE Has A Valid Mark Entitled To Protection. ...................................................10

    B.    There Is A Likelihood Of Confusion. ...................................................11

        1.    Strength of the Mark. ...........................................................11

        2.    Similarity Between Marks. .......................................................12

        3.    Competitive Proximity............................................................12

        4.    Likelihood Of Bridging The GAP. ..............................................13

        5.    Actual Confusion. ................................................................13

        6.    Good Faith. ......................................................................14

        7.    Quality of Defendants' Product. ................................................14

        8.    Sophistication of Buyers. ........................................................14

POINT II
VICE IS IRREPARABLY HARMED BY DEFENDANTS'
USE OF THE VICE® MARK.................................................................................15

POINT III
THE BALANCE OF EQUITIES TIPS IN FAVOR OF VICE AND AN
INJUNCTION IS IN THE PUBLIC INTEREST .........................................................16

CONCLUSION..............................................................................................17

i

## TABLE OF AUTHORITIES

PAGE

Cases

1-800 Contacts, Inc. v. Whenu.com,
    309 F. Supp.2d 467 (S.D.N.Y. 2003) ................................................................ 12

Bulman v. 2BKCO, Inc.,
    882 F. Supp.2d 551 (S.D.N.Y. 2012) ........................................................ passim

CJ Products LLC v. Snuggly Plushez LLC,
    809 F. Supp.2d 127 (E.D.N.Y. 2011) ...................................................... 10, 15, 16

Juicy Couture, Inc. v. Bella International Limited,
    2013 WL 978773 (S.D.N.Y. March 12, 2013) ...................................................... 15

McGregor-Doniger, Inc. v. Drizzle, Inc.,
    599 F.2d 1126 (2d. Cir. 1979) ............................................................................ 14

New York City Triathlon, PLCC v. NYC Triathlon Club, Inc.,
    704 F. Supp.2d 305 (S.D.N.Y. 2010) .......................................................... 15, 16

Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.,
    469 U.S. 189, 105 S. Ct. 658 (1985) .................................................................. 10

Plus Products v. Plus Disc. Foods, Inc.,,
    772 F.2d 999 (2d Cir. 1983) ............................................................................... 11

Polaroid Corporation v. Polaroid Electronics Corporation,
    287 F.2d 492 (2d Cir. 1961) ......................................................................... 10, 11

Power Test Petroleum Distributors, Inc. v. Calcu Gas, Inc.,
    754 F.2d 91 (2d Cir. 1985) ................................................................................. 15

Star Industries, Inc. v. Bacardi & Company Ltd.,
    412 F.3d 373 (2d Cir. 2005) ............................................................................... 11

U.S. Registration,
    No. 3339714 ......................................................................................................... 5

U.S. Registration,
    No. 3391928 ......................................................................................................... 5

U.S. Registration,
    No. 3612483 ......................................................................................................... 6

ii

Virgin Entertainment Ltd. v. Nawab,
    335 F. 3d 141 (2d Cir. 2003)...................................................................................................... 12

Winter v. Natural Resources Defense Council, Inc.,
    555 U.S. 7, 129 S. Ct. 365 (2008)........................................................................................ 9, 17

Statutes

15 U.S.C. § 1057(b) ........................................................................................................................ 10

15 U.S.C. § 1065............................................................................................................................. 10

15 U.S.C. § 1125(a)(1).................................................................................................................... 9

15 U.S.C. §1051 et seq.................................................................................................................... 1

{N0340177; 4}

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

————————————————————— x

VICE MEDIA, INC. and VICE MEDIA CANADA, INC.,   :

                                            Plaintiffs,   :

                                 -against-   :

VICE PRODUCTIONS LLC, VICE ENERGY LLC,   :
PHILIP DADE  and JOSHUA BLACKMAN,   :

                                      Defendants.   :

————————————————————— X

13 Civ. 2293 (JS) (AKT)

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION, BROUGHT BY ORDER TO SHOW CAUSE, FOR
A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION**

       Plaintiffs Vice Media, Inc. ("Vice Media") and Vice Media Canada, Inc. ("Vice Canada" and, collectively with Vice Media, "VICE") submits this memorandum of law in support of their motion, brought by order to show cause, for a temporary restraining order and preliminary injunction restraining defendants Vice Productions LLC ("Vice Productions"), Vice Energy LLC ("Vice Energy"), Philip Dade ("Dade") and Joshua Blackman ("Blackman") (collectively, Defendants) from using the VICE name and VICE® trademark (the "VICE® Mark") in violation of VICE's rights under federal trademark law (the Lanham Act, 15 U.S.C. §1051 et seq.) and applicable New York law.

### PRELIMINARY STATEMENT

       VICE is an extremely successful and wide-reaching global youth media company and brand that includes print, concerts, parties/events, music, online, television and film.  As more fully described below, VICE regularly and continuously promotes, markets and advertises concerts, parties and special events, and produces, broadcasts and/or transmits programs and

entertainment media content over television and the internet (including on MTV, HBO and YouTube), all encompassing VICE's unique, cutting-edge sensibility and point-of-view.

VICE seeks immediate injunctive relief restraining Defendants from their wrongful, intentional and, in fact, brazen use of the VICE name and VICE® Mark to promote, advertise and market concerts, parties and special events, as well as to produce, broadcast or transmit an internet reality show and operate infringing websites. Immediate relief is necessary because Defendants are currently, actively, and wrongfully using the VICE name and VICE® Mark to promote, advertise and market concerts and parties scheduled for April 20, 21, 28, and May 5, 2013, among other dates (see Creighton Aff. at Complaint Ex. B).[1] Such relief is also immediately necessary because Defendants, after reviewing VICE's "cease and desist letter", blatantly rejected it and returned it via UPS to VICE's attorneys, demonstrating that Defendants' infringement is knowing, willful, intentional, and that Defendants are clearly unwilling to cease absent Court intervention.

Defendants' wrongful and infringing use of the VICE name and VICE® Mark creates the false impression that Defendants' concerts, parties, special events, programs and other entertainment media content are affiliated with, sponsored or endorsed by VICE, when they are not. In this manner, Defendants' conduct usurps for Defendants' benefit the goodwill and reputation developed by VICE, and causes irreparable harm to VICE which, as owner of the registered trademark VICE®, is being denied the right to control the commercial use of its highly valuable trademark. Defendants' conduct is particularly egregious in that VICE's events and programs are cutting-edge and trendsetting, while those of Defendants are more run-of-the-mill, pertaining to parties and party-related content, thereby harming and/or diluting the VICE® Mark

---

[1]   "Creighton Aff." refers to the Affidavit of Andrew Creighton, President of Vice Media, sworn to on April 16, 2013 and submitted herewith.   A copy of the Complaint in this action is annexed to the Creighton Aff. as Ex. 1.

{N0340177; 4}

and brand.  Defendants' conduct constitutes trademark infringement and unfair competition under the Lanham Act, as well as unfair competition and dilution under New York law.

As more fully set forth in the proposed Order submitted herewith, VICE respectfully requests that this Court, inter alia, issue an order:

(1)   temporarily restraining and enjoining Defendants from further using the name VICE and the VICE® Mark in promoting, advertising, marketing, producing, broadcasting and/or transmitting concerts, parties, special events, programs and entertainment media content or in operating websites or mobile media, including but not limited to using the domain name www.viceproductions.net; and

(2)   directing Defendants to show cause by a date certain why a preliminary injunction should not issue.

The relief sought is necessary in order to preserve VICE's ability to obtain meaningful relief pending a trial on the merits.  Without entry of the requested relief, Defendants' infringing use of the VICE name and VICE® Mark will continue and VICE will continue to suffer irreparable harm caused by the inability to control the commercial exploitation of its own, highly valuable trademark.

## STATEMENT OF FACTS

A.      The Success and Fame of VICE and its VICE® Mark.

Originating in 1994, VICE is a global youth media company phenomenon that includes print, concerts, parties, special events, music, online, television and feature film divisions that operate throughout the United States and in over thirty countries.  Over the last decade, VICE has become an international media conglomerate with over 800 employees and more than $200 million in annual revenues.  (Creighton Aff. ¶ 3).

VICE originally made its mark by being on the fringes of popular culture, chronicling hip bands, fashion trends, and the cultural oddities that may have been be too "out there" for mainstream publications.  Over the last decade, however, the VICE name has become

{N0340177; 4}

3

synonymous with not only being hip but being irreverent, avant-garde and cutting-edge, with a unique point-of-view. (Creighton Aff. ¶ 4).

VICE provides media content over and operates numerous websites including, but not limited to, its popular homepage entitled "VICE" (www.vice.com) and Vice Records (http://www.vicerecords.com). VICE also creates, produces, and distributes, broadcasts and/or transmits television shows, internet programs, films, DVDs, records, books and other entertainment media content under the VICE family of trademarks, as detailed below. (Creighton Aff. ¶ 5).

The VICE name is famous throughout popular culture. Since 2011, VICE's videos have been watched appropriately 65 million times a month. VICE's YouTube channel is among the most watched on the entire Google-owned site (currently ranked 5th most popular out of 101 channels). The VICE YouTube channel has over 166 million video views and nearly 1.7 million subscribers. In 2011, the VICE television series entitled: "The VICE Guide To Everything" was broadcasted on MTV. On April 4, 2013, VICE premiered a 10-episode television series on HBO entitled "VICE". Since 2011, VICE's website has averaged over 13 million visits a month and is currently approaching over 158 million unique visitors, and those numbers continue to increase. VICE currently has more than thirty online shows, which have generated more than 300 million YouTube viewers. (Creighton Aff. ¶¶ 6-7).

Further, VICE regularly and continuously promotes, advertises and markets concerts, parties and special events in all major cities in the United States using the VICE name and VICE® Mark, particularly for a younger demographic, and has done so for over a decade (Creighton Aff. ¶ 8; see, e.g., Complaint Ex. F).

{N0340177; 4}

The fame and distinctiveness of the VICE name and the VICE® Mark is further evidenced by the following media quotes:

- "VICE is known for its raw, unsparingly honest editorial voice" - The Wall Street Journal;

- "Hipper than thou" - The New Yorker;

- "VICE is so cool - in a way MTV would love to be" - CNN;

- "a global music, publishing and fashion empire. Its take no prisoners approach has captured the imagination of what marketing people call 'trendsetting metropolitans' aged 21-34" and has been ranked as "the number-one tastemaker in this crucial demographic for the past five years" - The Guardian;

- "the VICE zeitgeist is hard to define, but you know it when you see it" - Business Week;

- "VICE is hugely influential.  It's kept them on the cutting edge" - John Reid, CEO, Warner Music UK;

- "[VICE] is punk rock for the 21st century.  They are better looking and more rock-and-roll than we will ever be." - U2's Bono;

- "VICE" has emerged as a premier new-media brand through a savvy combination of irreverence, smarts and fearlessness" - HBO Programming President Michael Lombardo.

- "a lot of people claim to target trendsetters, but very few people actually deliver them. Through brand integrity, community and truth, VICE speaks to every single one of those elusive yet essential assholes." - Livia Tortella, Vice President of Marketing & Artist Development, Atlantic Records.

Vice owns the entire right, title and interest in and to the VICE® Mark including, but not limited to, those listed in the records of the United States Patent and Trademark office (the "VICE® Registrations") for use in connection with, inter alia promoting concerts, parties and special events, and producing broadcasting and transmitting programs and entertainment media content.  Such VICE® Registrations include, but are not limited to, the following:

5

{N0340177; 4}

U.S. Registration No. 3391928: promoting concerts, parties and special events;

U.S. Registration No. 3339714: broadcasting and transmission of television programs and entertainment media content; broadcasting and transmission of radio programs and entertainment media content; management and operation of online discussion groups and forums; online radio, cable, video and television broadcasting; cable radio broadcasting; mobile media and entertainment services in the nature of electronic transmission of entertainment media content; broadcasting programs via a global computer network; broadcasting services and provision of telecommunication access to films and television programs provided via a video-on-demand service; broadcasting services and provision of telecommunication access to video and audio content provided via a video-on-demand service via the Internet; satellite, cable, network transmission of sounds, images, signals and data; providing online chat rooms, online forums, and electronic bulletin boards for transmission of messages among users in the field of general interest, humor, satire, fashion, music, politics, art, television, film, social commentary, popular culture, alternative culture, sports, sex, drugs, and rock and roll; providing online communications links which transfer the website user to other local and global web pages; and

U.S. Registration No. 3612483: information services provided online from a computer database or from the Internet relating to popular culture, namely, music, fashion shows, social commentary, film and television;

(See Creighton Aff. ¶ 9 and Complaint Ex. A).

VICE has continuously used the VICE® Mark since at least as early as 1994 in the United States, and has invested and continues to invest heavily in advertising and other marketing activities to develop and enhance the fame of the VICE® Mark. Through 2012, VICE has invested over $10 million in advertising and marketing relating to the VICE® Mark, and since 2010 has been averaging an annual advertising expenditure in excess of $2 million. (Creighton Aff. ¶ 10).

As a result of, among other things, VICE's reputation for being hip and trend-setting, as evidenced by its tremendous commercial success, word of mouth and unsolicited media coverage, the consuming public readily identifies the VICE name when used in

6

{N0340177; 4}

connection with concerts, parties and special events of others as signifying that those concerts, parties and/or special events are hip, trend-setting, cutting-edge, embody VICE's unique point-of-view and are flat-out "cool".   Accordingly, VICE's Mark has acquired a high level of fame distinctiveness in the marketplace, and represents the extraordinarily valuable goodwill that VICE owns. (Creighton Aff. ¶ 11).

B.     Defendants' Infringing Conduct.

On or about March 20, 2013, VICE became aware, through a news article, that Defendants were using the VICE® Mark without authorization in promoting, advertising and marketing concerts, parties, and special events, as well as by producing, broadcasting and transmitting online entertainment media content.  In particular, according to an article in the Gothamist,  Defendants have been promoting parties throughout the country using the VICE® Mark and then filming those parties to produce, broadcast and transmit an Internet reality show known as "pArty of 5" (see Creighton Aff. ¶ 12 and Complaint Exs. B and C).  Defendants have produced these "Vice" parties in locations including, but not limited to, East Hampton, NY and posted numerous photographs and engaged in extensive advertising of these parties on the web and elsewhere as taking place in "the Vice Hamptons Crib" and under the Vice Productions name.  (Creighton Aff. ¶ 12).

After further investigation, VICE discovered that Defendants are continuously and repeatedly wrongfully exploiting the VICE name VICE® Mark in promoting, advertising, marketing and/or producing concerts, parties, special events, programs and/or entertainment media content. Examples of infringing websites include:

http://viceproductions.net,

https://www.facebook.com/ViceProductions,

http://www.facebook.com/pages/Vice-Hamptons,

{N0340177; 4}

Crib/437631546262152?id=437631546262152&sk=page_map,

https://twitter.com/viCeHamptonsNY.

(Creighton Aff. ¶ 13 and Complaint Ex. E).  Further, VICE discovered that Defendants, through the above websites and otherwise, are actively and continuously promoting concerts and parties for the same youthful demographic set targeted by VICE, including concerts and parties scheduled for April 21, 22, 28, and May 5, 2013 (see Complaint Ex. B). Moreover, the stylized logo of the VICE name being used by Defendants is very similar to the stylized logo VICE has been using for many years, thereby adding to the risk of actual and/or potential confusion (compare VICE's logo at Exhibit F hereto with the logo used by Defendants at Exhibit B). (Creighton Aff. ¶ 13).

Accordingly, promptly upon learning of Defendants' infringing activities, VICE, by letter dated March 27, 2013 sent by overnight courier, demanded that Defendants, inter alia, cease and desist from advertising, promoting, selling or producing any products or services or otherwise using the VICE name or the VICE® Mark (the "VICE Letter" (Complaint Ex. G)).  In the VICE Letter, VICE demanded that Defendants confirm by no later than April 9, 2013 that they would so cease and desist.   (Creighton Aff. ¶ 14).

Defendants received VICE's cease and desist letter on or about March 28, 2013. However, it is readily apparent that Defendants are refusing to cease and desist.  After the VICE Letter was delivered to Defendants Dade and Vice Productions, Defendants Dade and Vice Productions reviewed the letter but then contacted the overnight courier to refuse delivery and requested that the courier retrieve the letter and return it to VICE's attorneys (see Complaint Exhibit H).  Further, Defendants refused VICE's other attempts to deliver the VICE Letter.

{N0340177; 4}

8

Thereafter, VICE attempted to serve Defendants by email, but Defendants blocked such email transmissions. (Creighton Aff. ¶ 15).

VICE also delivered the VICE Letter to Defendants Blackman and VICE Energy (see Exhibit I hereto), but they have failed to respond, and Defendants continue to promote, advertise and market concerts, parties and special events using the VICE name and Mark (see Exhibit B). In any event, the April 9, 2013 deadline has passed and Defendants have not responded in any way. Thus, it is clear that Defendants have no intention to cease and desist from engaging in their infringing and otherwise wrongful use of the VICE name and VICE® Mark (Creighton Aff. ¶ 16).

Defendants' above-mentioned conduct is unauthorized and is causing actual or potential confusion among consumers as to whether VICE, as opposed to Defendants, is promoting, marketing, advertising, producing, broadcasting or transmitting the concerts, parties, special events, programs or other entertainment media content, and whether or not same are being sponsored or endorsed by VICE, resulting in harm to VICE. (Creighton Aff. ¶ 17).

Accordingly, VICE filed this action on April 16, 2013, asserting claims for trademark infringement, dilution and unfair competition under the Lanham Act and/or New York common and statutory law.

ARGUMENT

"'A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" Bulman v. 2BKCO, Inc., 882 F. Supp.2d 551, 557 (S.D.N.Y. 2012) (citing Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 24, 129 S. Ct. 365, 376 (2008)) ("Bulman"). As set forth below, VICE makes a clear showing that these elements are satisfied.

9

POINT I

VICE IS LIKELY TO
SUCCEED ON THE MERITS

As set forth above, VICE asserts claims for trademark infringement under, <u>inter alia</u>, Section 43(a) of the Lanham Act and New York statutory and common law. Section 43(a) of the Lanham Act provides a right of action against "[a]ny person who, on or in connection with any goods or services, uses in commerce any word, term, name, symbol or device" that "is likely to cause confusion . . . as to the origin, sponsorship, or approval of his or her goods, services or commercial activities by another person." 15 U.S.C. § 1125(a)(1). "To state a claim for trademark infringement under Section 43(a), a plaintiff must show that (1) it has a valid mark entitled to protection, and (2) defendant's mark is likely to cause consumer confusion in the marketplace." <u>Bulman</u>, 882 F. Supp.2d at 558; <u>CJ Products LLC v. Snuggly Plushez LLC</u>, 809 F. Supp.2d 127, 150 (E.D.N.Y. 2011) ("<u>CJ Products</u>") (same).

A.    <u>VICE Has A Valid Mark Entitled To Protection</u>.

"[A] certificate of registration of a mark is prima facie evidence of the validity of the mark and of the owner's exclusive right to use the registered mark in connection with the goods or services specified in the certificate." <u>Bulman</u>, 882 F. Supp.2d at 558; <u>CJ Products</u>, 809 F. Supp.2d at 150 (registered trademark "carries a presumption of validity"); 15 U.S.C. § 1057(b). The VICE® Mark is not only a federally registered trademark but it has been used in commerce since at least 1999, and has been in continuous use for at least five years subsequent to its registration (<u>see</u> Complaint Ex. A). As a result, the VICE® Mark is an incontestable, valued trademark under § 15 of the Lanham Act, <u>see</u> 15 U.S.C. § 1065, and may not be challenged on the basis that it is merely descriptive. <u>See Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.</u>, 469 U.S. 189, 196, 105 S. Ct. 658, 662 (1985).

{N0340177; 4}

10

B.     There Is A Likelihood Of Confusion.

In assessing likelihood of customer confusion in the marketplace, district courts must apply the multi-factor test articulated by the Second Circuit in Polaroid Corporation v. Polaroid Electronics Corporation, 287 F.2d 492 (2d Cir. 1961). "This test requires analysis of several nonexclusive factors, including: (1) the strength of the senior user's mark; (2) the degree of similarity between the two marks; (3) the proximity of the products; (4) the likelihood that the prior owner will bridge the gap; (5) actual confusion; (6) the junior user's good faith in adopting its own mark; (7) the quality of defendant's product; and (8) the sophistication of buyers." Bulman, 882 F. Supp.2d at 558 (citing Polaroid, 287 F.2d at 495).

1.     Strength of the Mark.

"The strength of a mark 'depends ultimately on its distinctiveness . . . in the eyes of the purchasing public.'" Bulman, 882 F. Supp.2d at 558 (quoting Plus Products v. Plus Disc. Foods, Inc., 772 F.2d 999, 1005 (2d Cir. 1983). "To assess the distinctiveness and protectibility of marks, courts have developed a sliding scale of categories that are entitled to increasing protection under the law. These five categories -- from weakest to strongest -- are (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; and (5) fanciful. "Bulman, 882 F. Supp.2d at 558-59. "While suggestive, arbitrary, and fanciful marks are presumably protectable, a mark that is merely descriptive is protectable only with evidence of secondary meaning." Bulman, 882 F. Supp.2d at 559.

"Descriptive marks are those consisting of words identifying qualities of the product. Suggestive marks are those that are not directly descriptive, but do suggest a quality or qualities the product, through the use of imagination, thought and perception. Arbitrary . . . marks are ones that do not communicate any information about the product either directly or by

{N0340177; 4}

11

suggestions." Bulman, 882 F. Supp.2d at 559 (quoting Star Industries, Inc. v. Bacardi & Company Ltd., 412 F.3d 373, 385 (2d Cir. 2005) (internal citations omitted)).

The VICE name and Mark does not describe the concerts, parties, special events programs or entertainment media content at issue in this dispute but rather are arbitrary or, in the alternative, suggestive, in that the use of the VICE® Mark in connection therewith suggests qualities of the above through imagination, thought and perception, namely that the entertainment is edgy, cutting-edge or irreverent. Hence, the VICE® Mark is clearly strong. In any event, as the VICE® Mark is incontestable, distinctiveness is presumed. See 1-800 Contacts, Inc. v. Whenu.com, 309 F. Supp.2d 467, 495 (S.D.N.Y. 2003). Accordingly, this Polaroid factor favors VICE.

2.   Similarity Between Marks.

"To assess the similarity between marks, courts must consider the context in which the mark is found. Not surprisingly, the marks must be compared against each other to assess whether the similarities are likely to cause consumer confusion." Bulman, 882 F. Supp.2d at 560. Here, the marks use the identical VICE name, the stylized logos are very similar, including block lettering (compare Complaint Ex. F with Ex. B) and they are used in the same context, namely promoting, advertising and marketing concerts, parties, special events, and producing, broadcasting and transmitting programs and entertainment media context, particularly aimed at a young demographic, and particularly using the internet. This Polaroid factor favors VICE.

3.   Competitive Proximity.

"'The closer the secondary user's goods are to those the consumer has seen marketed under the prior user's brand, the more likely that the consumer will mistakenly assume a common source.'" Bulman, 882 F. Supp.2d at 560 (quoting Virgin Entertainment Ltd. v.

{N0340177; 4}

12

Nawab, 335 F. 3d 141, 150 (2d Cir. 2003)). "In assessing product proximity, courts look at the nature of the products themselves, and the structure of the relevant market, considering whether the products differ in content, geographic distribution, market position and audience appeal." Bulman, 882 F. Supp.2d at 560 (internal citations omitted).

Here, VICE and Defendants promote, market, and advertise concerts, parties and special events, as well as produce, broadcast and transmit programs and entertainment media content, to a young demographic, in major cities throughout the country, using the same primary means, namely the internet. This Polaroid factor favors VICE.

4.    Likelihood Of Bridging The GAP.

"This Polaroid factor looks to whether the senior user is likely to enter the junior user's market and whether prospective customers are aware of this intention." Bulman, 882 F. Supp.2d at 561.    Here, the parties' services are already similar (e.g., concerts, parties, entertainment media content) and are being offered through the same channels (primarily the internet) and to the same sets of consumers (young adults).    Thus, this Polaroid factor is not relevant. See Bulman, 882 F. Supp.2d at 562.

5.    Actual Confusion.

"For a finding of trademark infringement, it is not essential to demonstrate actual confusion." Bulman, 882 F. Supp.2d at 562.  "In assessing whether an alleged infringement has resulted in 'actual confusion', courts must focus on whether the prospective purchaser -- and not other industry members or general members of the public -- are likely to be deceived". Bulman, 882 F. Supp. 2d at 562.  Here, where there is an "identical nature of [the parties'] marks [and] their use in connection with similar services", it is likely that the public will be confused. Accordingly, this factor favors VICE. Id.

{N0340177; 4}

13

6. <u>Good Faith</u>.

"Under this factor, courts look to the conduct of the defendant, assessing whether defendant adopted its mark with the intention or capitalizing on plaintiffs' reputation and goodwill and any confusion between his and the senior user's product." <u>Bulman</u>, 882 F. Supp.2d at 563. Here, Defendants' are using the VICE name and a similar stylized logo for similar purposes. Further, Defendants' blatant disregard of the VICE Letter demonstrates bad faith. This factor factors VICE.

7. <u>Quality of Defendants' Product</u>.

While the quality of what VICE provides, which includes concerts featuring better-known bands and a television series on MTV and one on HBO featuring higher production value and more substantial content, exceeds that of Defendants, "the quality of Defendants' product does not matter, because a senior user is not required to put its reputation in a junior user's hands no matter how capable those hands may be." <u>Bulman</u>, 882 F. Supp.2d at 563. Thus, this factor while favoring VICE, is "largely irrelevant". <u>Id.</u>

8. <u>Sophistication of Buyers</u>.

"In considering the sophistication of the relevant purchasers, courts must evaluate '[t]he general impression of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving attention such purchasers usually give in buying that class of goods.'" <u>Bulman</u>, 882 F. Supp.2d at 563 (quoting <u>McGregor-Doniger, Inc. v. Drizzle, Inc.</u>, 599 F.2d 1126, 1137 (2d. Cir. 1979). "The more sophisticated the purchasers, the less likely they will be confused by the presence of similar marks in the marketplace. However, even the most sophisticated of consumers can be confused when the marks and services are very similar." <u>Bulman</u>, 882 F. Supp.2d at 563.

{N0340177; 4}

14

Here, the consumers at issue are relatively young party-goers and those who watch edgy content over the internet.  Thus, the buyers will tend to be unsophisticated.  Further, as set forth above, because the marks and services are similar, this increases the likelihood of confusion whether the consumers are sophisticated or not.  This factor favors VICE.

*     *     *

Based on the above Polaroid factors, VICE has demonstrated a likelihood of confusion, and therefore a likelihood of success on the merits of VICE's trademark infringement claim under § 43(a) of the Lanham Act.

POINT II

VICE IS IRREPARABLY HARMED BY
DEFENDANTS' USE OF THE VICE® MARK

Prospective loss of goodwill that was amassed by investing time and money in using a trademark is enough in and of itself to support a finding of irreparable harm.  The New York City Triathlon, PLCC v. NYC Triathlon Club, Inc., 704 F. Supp.2d 305, 343 (S.D.N.Y. 2010); Bulman, 882 F. Supp.2d at 564.  Further, "[i]rreparable harm 'exists in a trademark case when the party seeking the injunction shows that it will lose control over  the reputation of its trademark pending trial' because loss of control over one's reputation is neither 'calculable nor precisely compensable.'"  New York City Triathlon, 704 F. Supp.2d at 343 (quoting Power Test Petroleum Distributors, Inc. v. Calcu Gas, Inc., 754 F.2d 91, 95 (2d Cir. 1985); CJ Products, 809 F. Supp.2d at 156 (same); Juicy Couture, Inc. v. Bella International Limited, 2013 WL 978773, *8 (S.D.N.Y. March 12, 2013) (same; see cases cited therein).

Here, by misappropriating the VICE® Mark, Defendants are "not only trading on [VICE's] earned goodwill but is also taking from [VICE] the ability to control its reputation and the services offered under its name and mark".  Hence, irreparable harm exists.  New York City

15

{N0340177; 4}

Triathlon, 704 F. Supp.2d at 343.   Further, "the damage to [VICE's] goodwill and reputation cannot be quantified, as it is unknown how many potential customers plaintiffs will lose from their loss of reputation and goodwill due to consumer [ ] confus[ion]."   CJ Products, 809 F. Supp.2d at 156.

POINT III

THE BALANCE OF EQUITIES<br>TIPS IN FAVOR OF VICE AND AN<br>INJUNCTION IS IN THE PUBLIC INTEREST

Here, Defendants either purposefully misappropriated the VICE® Name and Mark or failed to conduct proper diligence prior to using same.   Further, Defendants flatly rejected any and all attempts by VICE to bring the matter to Defendants' attention and rectify the situation.  VICE has invested much time and money in the goodwill and distinctiveness of its VICE® Mark and brand.  It is unfair to allow Defendants to trade off this goodwill and diminish the VICE® Mark by using it for itself.   Even if an injunction is granted, Defendants remain free to promote concerts, parties and content, only they must do so using a different and non-infringing name and Mark.

In addition, "the public interest is best served by removing confusingly similar marks so that the public can more freely access the parties' products." Bulman, 882 F. Supp.2d at 566; CJ Products, 809 F. Supp.2d at 157 ("[t]he consuming public has a protectable interest in being free from confusion, deception and mistake").   Hence, the balancing of the equities tips in favor of VICE and injunctive relief is in the public's best interest.

*     *     *

Accordingly, because VICE has demonstrated that it is "likely to succeed on the merits, that [VICE is] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [VICE's] favor, and that an injunction is in the public interest,"

{N0340177; 4}

16

Respectfully submitted,

SULLIVAN & WORCESTER LLP

By: _____

Gerry Silver, Esq.
1633 Broadway
New York, NY 10019
(T) (212) 660-3096
(F) (212) 660-3001
gerry.silver@sandw.com

Kimberly B. Herman, Esq.
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, MA 02109
(T) (617) 338-2943
(F) (617) 338-2880
kherman@sandw.com

Attorneys for Plaintiffs

{N0340016; 2}

6