UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------- x

VICE MEDIA, INC. and VICE MEDIA CANADA, INC.,  :

                              Plaintiffs,  :

                     -against-  :

VICE PRODUCTIONS LLC, VICE ENERGY LLC,  :
PHILIP DADE  and JOSHUA BLACKMAN,  :

                          Defendants.  :

--------------------------------------------------------- x

13 Civ. 2293 (JS) (AKT)

**F I L E D**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   **APR 17 2013**   ★

LONG ISLAND OFFICE

STATE OF NEW YORK    )
                        ) SS.:
COUNTY OF KINGS     )

Andrew Creighton, being duly sworn, deposes and says:

1.      I am the President of plaintiff Vice Media, Inc. ("Vice Media"), an affiliate of Plaintiff Vice Media Canada, Inc. ("Vice Canada", and, together with Vice Media, "VICE" or "Plaintiffs"). I submit this affidavit in support of VICE's motion, brought by order to show cause, seeking a temporary restraining order and a preliminary injunction restraining defendants Vice Productions, LLC ("Vice Productions"), Vice Energy LLC ("Vice Energy"), Philip Dade ("Dade") and Joshua Blackman ("Blackman", and together with Vice Productions, Vice Energy and Dade, "Defendants") from infringing upon the VICE name and the VICE® trademark.

2.      The facts set forth herein are based on my personal knowledge and/or my review of the books and records of VICE. The facts and circumstances of this action are more fully set forth in the Complaint in this action, which is annexed hereto as Exhibit 1 (the "Complaint").

{N0340216; 2}

<u>VICE and Its Trademark Rights</u>

3.     Originating in 1994, VICE is a global youth media company phenomenon that includes print, concerts, parties/events, music, online, television and feature film divisions that operate throughout the United States and in over thirty countries. Over the last decade, VICE has become an international media conglomerate with over 800 employees and more than $200 million in annual revenues.

4.     VICE originally made its mark by being on the fringes of popular culture, chronicling hip bands, fashion trends, and the cultural oddities that may be too "out there" for mainstream publications.  Currently, the VICE name is now synonymous with not only being hip but being irreverent, avant-guard and cutting-edge, with a unique point-of-view.

5.     VICE provides media content over and operates numerous websites including, but not limited to, its popular homepage entitled "VICE" (www.vice.com) and Vice Records (http://www.vicerecords.com). VICE also creates, produces, and distributes, broadcasts and/or transmits television shows, internet programs, films, DVDs, records, books and other entertainment media content under the VICE family of trademarks, as detailed below.

6.     Since 2011, VICE's videos have been watched appropriately 65 million times a month. VICE's YouTube channel is among the most watched on the entire Google-owned site (currently ranked 5th most popular out of 101 channels). The VICE YouTube channel has over 166 million video views and nearly 1.7 million subscribers. Since 2011, VICE's website has averaged over 13 million visits a month and is currently approaching over 158 million unique visitors, and those numbers continue to increase. VICE currently has more than thirty online shows, which have generated more than 300 million YouTube viewers.

{N0340216; 2}

7.      In 2011, the VICE television series entitled: "The VICE Guide To Everything" was broadcasted on MTV. On April 4, 2013, VICE premiered a 10-episode television series on HBO entitled "VICE".

8.      Further, VICE regularly and continuously promotes, advertises and markets VICE concerts, parties and special events in all major cities in the United States using the VICE name and Mark, particularly for a younger demographic, and has done so for over a decade.

9.      VICE owns the entire right, title and interest in and to the trademark VICE® (the "VICE® Mark"), including but not limited to those listed in the records of the United States Patent and Trademark Office and identified at Exhibit A to the Complaint (together, the "VICE® Registrations"), for use in connection with, among other things, all of the services identified above. Such VICE® Registrations include, but are not limited to, the following:

> U.S. Registration No. 3391928: promoting concerts, parties and special events;
>
> U.S. Registration No. 3339714: broadcasting and transmission of television programs and entertainment media content; broadcasting and transmission of radio programs and entertainment media content; management and operation of online discussion groups and forums; online radio, cable, video and television broadcasting; cable radio broadcasting; mobile media and entertainment services in the nature of electronic transmission of entertainment media content; broadcasting programs via a global computer network; broadcasting services and provision of telecommunication access to films and television programs provided via a video-on-demand service; broadcasting services and provision of telecommunication access to video and audio content provided via a video-on-demand service via the Internet; satellite, cable, network transmission of sounds, images, signals and data; providing online chat rooms, online forums, and electronic bulletin boards for transmission of messages among users in the field of general interest, humor, satire, fashion, music, politics, art, television, film, social commentary, popular culture, alternative culture, sports, sex, drugs, and rock and roll; providing online communications links which transfer the website user to other local and global web pages; and

{N0340216; 2}

3

U.S. Registration No. 3612483: information services provided online from a computer database or from the Internet relating to popular culture, namely, music, fashion shows, social commentary, film and television;

(See Complaint Exhibit A)

10.     VICE has continuously used the VICE® Mark since at least as early as 1994 in the United States, and has invested and continues to invest heavily in advertising and other marketing activities to develop and enhance the fame of the VICE® Mark. Through 2012, VICE has invested over $10 million in advertising and marketing relating to the VICE® Mark, and since 2010 has been averaging an annual advertising expenditure in excess of $2 million. As a result of, among other things, such advertising and marketing, VICE has established considerable goodwill in the VICE® Mark in the United States.

11.     As a result of, among other things, VICE's reputation for being hip and trend-setting, as evidenced by its tremendous commercial success, word of mouth and unsolicited media coverage, the consuming public readily identifies the VICE name when used in connection with concerts, parties and special events of others as signifying that those concerts, parties and/or special events are hip, trend-setting, cutting-edge, embody VICE's unique point-of-view and are flat-out "cool".   Accordingly, VICE's Mark has acquired a high level of fame distinctiveness in the marketplace, and represents the extraordinarily valuable goodwill that VICE owns.

Defendants' Infringing Use of the VICE Name and VICE® Mark

12.     On or about March 20, 2013, VICE became aware, through a news article, that Defendants were using the VICE® Mark without authorization in promoting, advertising and marketing concerts, parties, and special events, as well as by producing, broadcasting and transmitting online entertainment media content. In particular, according to an article in the Gothamist, Defendants have been promoting parties throughout the country using the VICE®

{N0340216; 2}

4

Mark and then filming those parties to produce, broadcast and transmit an Internet reality show known as "pArty of 5" (see Complaint Exs. B and C). Defendants have produced these "Vice" parties in locations including, but not limited to, the East Hamptons, NY and posted numerous photographs and engaged in extensive advertising of these parties on the web and elsewhere as taking place in "the Vice Hamptons Crib" and under the VICE name.

13.     After further investigation, VICE discovered that Defendants are continuously and repeatedly wrongfully exploiting the VICE® Mark in promoting, advertising, marketing and/or producing concerts, parties, special events, programs and/or entertainment media content (see Complaint Exs. B and C). Examples of infringing websites include:

> http ://viceproductions.net,
>
> https://www. facebook. com/ViceProductions,
>
> http ://www. facebook.com/pages/Vice-Hamptons,
>
> Crib/437631546262152?id=437631546262152&sk=page_map,
>
> https://twitter.com/viCeHamptonsNY.

(See Complaint at Exs. B and E). Further, the stylized logo of the VICE name being used by Defendants is very similar to the stylized logo VICE has been using for many years (compare VICE stylized logo at Complaint Ex. F with Defendants' wrongful use of the VICE name in a stylized logo at Complaint Ex. B).

14.     Accordingly, promptly upon learning of Defendants' infringing activities, VICE, through its attorneys, by letter dated March 27, 2013 sent by overnight courier, demanded that Defendants, inter alia, cease and desist from advertising, promoting, selling or producing any products or services or otherwise using the VICE name or the VICE® Mark (the "VICE Letter" (Complaint at Ex. G). In the VICE letter, VICE demanded that Defendants confirm by no later than April 9, 2013 that they would so cease and desist.

{N0340216; 2}

15.    Defendants received VICE's cease and desist letter on or about March 28, 2013. However, it is readily apparent that Defendants are refusing to cease and desist. After the VICE Letter was delivered to defendants Dade and Vice Productions, Dade and Vice Productions reviewed the letter but then contacted the overnight courier to refuse delivery and requested that the courier retrieve the letter (see Complaint Ex. H). Further, Defendants refused other attempts to deliver the VICE Letter. Thereafter, VICE attempted to serve Defendants by email, but Defendants apparently blocked such email transmissions.

16.    VICE did successfully deliver the VICE Letter to defendants Blackman and VICE Energy (see Complaint Ex. I), but Defendants have failed to respond in any way, and Defendants continue to promote, advertise and market concerts, parties and special events using the VICE name and Mark, including concerts, parties and special events scheduled for late April 2013 (see Complaint Ex. B). In any event, the April 9, 2013 deadline has passed and Defendants have not responded in any way. Thus, it is clear that Defendants have no intention to cease and desist from engaging in their infringing and otherwise wrongful use of the VICE name and VICE® Mark.

17.    Defendants' above-mentioned conduct is unauthorized and has caused actual confusion or potential confusion among consumers as to whether VICE, as opposed to Defendants, is promoting, marketing, advertising, producing, broadcasting or transmitting the concerts, parties, special events, programs or other entertainment media content, and whether or

{N0340216; 2}

not same are being sponsored or endorsed by VICE, resulting in harm to VICE.  We thereby

request that the Court issue the requested temporary restraining order and preliminary injunction.

Andrew Creighton

Sworn to before me this
___ day of April, 2013

Notary Public

**GERALD D. SILVER**
Notary Public, State of New York
    No. 02S15019523
Qualified in Nassau County
Commission Expires Jan. 23, 2018

{N0340216; 2}

7

**EXHIBIT 1**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CV 13 - 2293

VICE MEDIA, INC. and VICE MEDIA CANADA, INC.,

                Plaintiffs,

          -against-

VICE PRODUCTIONS LLC, VICE ENERGY LLC,
PHILIP DADE and JOSHUA BLACKMAN,

                Defendants.

13 Civ. ____ ( ___ )

COMPLAINT

---

Plaintiffs Vice Media, Inc. ("Vice Media") and Vice Media Canada, Inc. ("Vice Canada", and, together with Vice Media, "VICE" or "Plaintiffs"), as and for their Complaint herein as against defendants Vice Productions, LLC ("Vice Productions"), Vice Energy LLC ("Vice Energy"), Philip Dade ("Dade") and Joshua Blackman ("Blackman", and together with Vice Productions, Vice Energy and Dade, "Defendants"), allege as follows.

<u>Nature Of The Action</u>

1.      As more fully set forth below, VICE is one of the most famous and distinctive media companies in North America, if not worldwide. Of particular relevance to this action, VICE promotes, advertises and markets concerts, parties and special events, and also produces, broadcasts and/or transmits television programs and other entertainment media content over cable, television broadcasting, satellite, the internet and through mobile media, all under the VICE family of trademarks. VICE owns the entire right, title and interest in and to the trademark VICE® (the "VICE® Mark"), including but not limited to those listed in the records of the United States Patent and Trademark Office and identified at Exhibit A hereto (together, the "VICE® Registrations"), for use in connection with, <u>inter alia</u>, all of the services identified above.

{N0339736; 3}

**EXHIBIT A**     **EXHIBIT B**     **EXHIBIT C**     **EXHIBIT D**     **EXHIBIT E**

2.      VICE is seeking an injunction and other relief against Defendants, who, VICE has recently learned, have been utilizing the VICE name and VICE® Mark to, inter alia, promote, advertise, market, produce, broadcast and/or transmit concerts, parties, special events, programs and/or entertainment media content. For example, Defendants have blatantly exploited the VICE® Mark without authorization by (i) promoting, advertising and marketing numerous concerts, parties and special events (see, e.g., promotional materials at Exhibit B hereto), and by (ii) producing, broadcasting and transmitting an internet reality show known as "pArty of 5", which features parties in East Hampton, NY and other locations (see, e.g., the news article at Exhibit C hereto).  Defendants have engaged in promoting, marketing, advertising, producing, broadcasting and transmitting these concerts, parties, special events programs and entertainment media content using the "Vice" or "Vice Productions" name, and/or have referred to such parties as taking place in "the Vice Hamptons Crib".  Defendants have also repeatedly used the VICE name and VICE® Mark on infringing websites as well, including viceproductions.net.

3.      In doing so, Defendants have misappropriated and exploited the goodwill and unique reputation of VICE.  Further, Defendants' use of the VICE name and VICE® Mark has already confused and misled, and is likely to continue to confuse and mislead, the public into believing that VICE is affiliated with, sponsored or endorsed the concerts, parties, special events, programs, or other entertainment media content being promoted, advertised, marketed, produced, broadcasted and/or transmitted by Defendants.  Defendants' conduct has caused and, if left unchecked, will continue to cause, irreparable damage to the reputation and goodwill associated with VICE and the VICE® Mark.

4.      Further, Defendants' infringing conduct is willful, intentional and, in fact, brazen.  For example, after reviewing VICE's "cease and desist letter" delivered by UPS,

Defendants called UPS to not only refuse delivery but to have UPS retrieve the letter to return it to VICE. Further, Defendants blocked email delivery of the cease-and-desist letter on its email systems. Thus, absent injunctive relief, it is apparent that Defendants will not stop their clearly wrongful and infringing conduct.

The Parties, Jurisdiction and Venue

5.     Plaintiff Vice Media is a corporation organized under the laws of Delaware, with its principal place of business located at 99 North 10th Street, Brooklyn, NY 11211.

6.     Plaintiff Vice Canada is a corporation organized under the laws of Canada with its principal place of business located at 127B King Street, Montreal, Canada H3C 2P2.

7.     Upon information and belief, Defendant Vice Productions is a limited liability company organized under the laws of California, with its principal place of business located at 503 Stone Road, Benicia, CA 94510-1113.

8.     Upon information and belief, Defendant Vice Energy is a limited liability company organized under the laws of Texas with its principal place of business located at 2800 Kirby Drive, Apt. B721, Houston, TX 77098.

9.     Upon information and belief, Defendant Dade is an owner, member and/or officer of Vice Productions and/or Vice Energy, and a citizen of the State of California, residing and/or with a place of business at 503 Stone Road, Benicia, CA 94510-1113.

10.     Upon information and belief, Defendant Blackman is an owner member, and/or officer of Vice Energy and/or Vice Productions, and a citizen of the State of Texas, residing at and/or with a place of business at 2800 Kirby Drive, Apt. B721, Houston, TX 77098.

11.     The amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

12.     This is an action for trademark infringement, unfair competition/false designation of origin and trademark dilution under the Trademark Act of 1946, 15 U.S.C. § 1051, et seq., as amended (the "Lanham Act"), and for unfair competition and trademark dilution under the laws of the State of New York,

13.     Accordingly, this Court has original jurisdiction over this action under 28 U.S.C. §§ 1331, 1332 and 1338, and has jurisdiction over the state law claims under the principles of supplemental jurisdiction.

14.     This Court has personal jurisdiction over Defendants in that Defendants' have conducted, and continue to conduct, business in this district, and because acts of infringement upon which the allegations in this Complaint are based occurred in this District, particularly in East Hampton, NY.

15.     For example, as set forth in the news article annexed hereto at Exhibit B and in a Complaint pending in an action before this Court entitled Silverman v. Blackman, et. al., 13 Civ. 1349 (JS)(ARL), each of the Defendants personally was present and involved in promoting, advertising, marketing, producing, broadcasting, and/or transmitting a multi-day party in East Hampton, NY, and the internet reality television program showing such party, which activities infringed upon the VICE name and VICE® Mark (a copy of the Complaint is annexed hereto as Exhibit D).

16.     In addition, Defendants continuously promote, advertise, market, produce, broadcast and/or transmit concerts, parties, special events, programs and/or entertainment media content in this district.  Further, Defendants have caused damages, injury and/or harm in this district, as plaintiff Vice Media has its principal place of business in this district.

17. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) (2) and (3) in that this is the judicial district in which a substantial part of the events or omissions giving rise to the claims asserted herein occurred, or, in the alternative, there is no district where an action may otherwise be brought as provided in 28 U.S.C. 1391(b), and Defendants are subject to the Court's personal jurisdiction with respect to this action.

<u>VICE and Its Trademark Rights</u>

18. Originating in 1994, VICE is a global youth media company phenomenon that includes print, concerts, parties/events, music, online, television and feature film divisions that operate throughout the United States and in over thirty countries. Over the last decade, VICE has become an international media conglomerate with over 800 employees and more than $200 million in annual revenues.

19. VICE originally made its mark by being on the fringes of popular culture, chronicling hip bands, fashion trends, and the cultural oddities that may be too "out there" for mainstream publications. Currently, the VICE name is now synonymous with not only being hip but being irreverent, avant-guard and cutting-edge, with a unique point-of-view.

20. VICE provides media content over and operates numerous websites including, but not limited to, its popular homepage entitled "VICE" (www.vice.com) and Vice Records (http://www.vicerecords.com). VICE also creates, produces, and distributes, broadcasts and/or transmits television shows, internet programs, films, DVDs, records, books and other entertainment media content under the VICE family of trademarks, as detailed below.

21. The VICE name is famous throughout popular culture. Since 2011, VICE's videos have been watched appropriately 65 million times a month. VICE's YouTube channel is among the most watched on the entire Google-owned site (currently ranked 5th most

popular out of 101 channels). The VICE YouTube channel has over 166 million video views and nearly 1.7 million subscribers. In 2011, the VICE television series entitled: "The VICE Guide To Everything" was broadcasted on MTV. On April 4, 2013, VICE premiered a 10-episode television series on HBO entitled "VICE". Since 2011, VICE's website has averaged over 13 million visits a month and is currently approaching over 15 million unique visitors, and those numbers continue to increase. VICE currently has more than thirty online shows, which have generated more than 300 million YouTube viewers. VICE also regularly and continuously promotes, advertises and markets concerts, parties and special events in all major cities in the United States using the VICE name, particularly for a younger demographic, and has done so for over a decade.

22. The fame and distinctiveness of the VICE name and the VICE Mark is further evidenced by the following media quotes:

- "VICE is known for its raw, unsparingly honest editorial voice" - The Wall Street Journal;

- "Hipper than thou" - The New Yorker;

- "VICE is so cool - in a way MTV would love to be" - CNN;

- "a global music, publishing and fashion empire. Its take no prisoners approach has captured the imagination of what marketing people call 'trendsetting metropolitans' aged 21-34" and has been ranked as "the number-one tastemaker in this crucial demographic for the past five years" - The Guardian;

- "the VICE zeitgeist is hard to define, but you know it when you see it" - Business Week;

- "VICE is hugely influential. It's kept them on the cutting edge" - John Reid, CEO, Warner Music UK;

- "[VICE] is punk rock for the 21st century. They are better looking and more rock-and-roll than we will ever be." - U2's Bono;

- "VICE" has emerged as a premier new-media brand through a savvy combination of irreverence, smarts and fearlessness" - HBO Programming President Michael Lombardo.

- "a lot of people claim to target trendsetters, but very few people actually deliver them.  Through brand integrity, community and truth, VICE speaks to every single one of those elusive yet essential assholes." - Livia Tortella, Vice President of Marketing & Artist Development, Atlantic Records.

23.     Vice owns the entire right, title and interest in and to the trademark VICE® including, but not limited to, the VICE® Registrations.  Such VICE® Registrations include, but are not limited to, the following:

U.S. Registration No. 3391928:  promoting concerts, parties and special events;

U.S. Registration No. 3339714:  broadcasting and transmission of television programs and entertainment media content; broadcasting and transmission of radio programs and entertainment media content; management and operation of online discussion groups and forums; online radio, cable, video and television broadcasting; cable radio broadcasting; mobile media and entertainment services in the nature of electronic transmission of entertainment media content; broadcasting programs via a global computer network; broadcasting services and provision of telecommunication access to films and television programs provided via a video-on-demand service; broadcasting services and provision of telecommunication access to video and audio content provided via a video-on-demand service via the Internet; satellite, cable, network transmission of sounds, images, signals and data; providing online chat rooms, online forums, and electronic bulletin boards for transmission of messages among users in the field of general interest, humor, satire, fashion, music, politics, art, television, film, social commentary, popular culture, alternative culture, sports, sex, drugs, and rock and roll; providing online communications links which transfer the website user to other local and global web pages; and

U.S. Registration No. 3612483:  information services provided online from a computer database or from the Internet relating to popular culture, namely, music, fashion shows, social commentary, film and television;

(See Exhibit A)

24.     VICE has continuously used the VICE® Mark since at least as early as 1994 in the United States, and has invested and continues to invest heavily in advertising and other marketing activities to develop and enhance the fame of the VICE® Mark.  Through 2012,

{N0339736; 3}

- 7 -

VICE has invested over $10 million in advertising and marketing relating to the VICE® Mark, and since 2010 has been averaging an annual advertising expenditure in excess of $2 million. As a result of, inter alia, such advertising and marketing, VICE has established considerable goodwill in the VICE® Mark in the United States.

25.     As a result of, among other things, VICE's reputation for being hip and trend-setting, as evidenced by its tremendous commercial success, word of mouth and unsolicited media coverage, the consuming public readily identifies the VICE name when used in connection with concerts, parties and special events of others as signifying that those concerts, parties and/or special events are hip, trend-setting, cutting-edge, embody VICE's unique point-of-view and are flat-out "cool".    Accordingly, VICE's Mark has acquired a high level of fame distinctiveness in the marketplace, and represents the extraordinarily valuable goodwill that VICE owns.

### Defendants' Infringing Use of the VICE Name and Mark

26.     On or about March 20, 2013, VICE became aware, through a news article, that Defendants were using the VICE® Mark without authorization in promoting, advertising and marketing concerts, parties, and special events as well as by producing, broadcasting and transmitting online entertainment media content.    In particular, according to an article in the Gothamist, Defendants have been promoting parties throughout the country using the VICE® Mark and then filming those parties to produce, broadcast and transmit an Internet reality show known as "pArty of 5" (see Exhibits B and C).    Defendants have produced these "Vice" parties in locations including, but not limited to, the East Hamptons, NY and posted numerous photographs and engaged in extensive advertising of these parties on the web and elsewhere as taking place in "the Vice Hamptons Crib" and under the Vice Productions name.

{N0339736; 3}                                          - 8 -

27.     After further investigation, VICE discovered that Defendants are continuously and repeatedly wrongfully exploiting the VICE® Mark in promoting, advertising, marketing and/or producing concerts, parties, special events, programs and/or entertainment media content. Examples of infringing websites include:

> http://viceproductions.net,
>
> https://www.facebook.com/ViceProductions,
>
> http://www.facebook.com/pages/Vice-Hamptons,
>
> Crib/437631546262152?id=437631546262152&sk=page_map,
>
> https://twitter.com/viCeHamptonsNY.

(See Exhibit E annexed hereto)

28.     Further, the stylized logo of the VICE name being used by Defendants is very similar to the stylized logo VICE has been using for many years, thereby adding to the risk of actual and/or potential confusion (compare VICE's logo at Exhibit F hereto with the logo used by Defendants at Exhibit B).

29.     Accordingly, promptly upon learning of Defendants' infringing activities, VICE, by letter dated March 27, 2013 sent by overnight courier, demanded that Defendants, inter alia, cease and desist from advertising, promoting, selling or producing any products or services or otherwise using the VICE name or the VICE® Mark (the "VICE Letter", a true and correct copy of which is annexed hereto as Exhibit G). In the VICE letter, VICE demanded that Defendants confirm by no later than April 9, 2013 that they would so cease and desist.

30.     Defendants received VICE's cease and desist letter on or about March 28, 2013. However, it is readily apparent that Defendants are refusing to cease and desist. After the VICE Letter was delivered to Dade and Vice Productions, Dade and Vice Productions reviewed

the letter but then contacted the overnight courier to <u>refuse delivery</u> and requested that the courier retrieve the letter (<u>see</u> Exhibit H annexed hereto).  Further, Defendants refused other attempts to deliver the VICE Letter.  Thereafter, VICE attempted to serve Defendants by email, but Defendants blocked such email transmissions.

31.    VICE did successfully deliver the VICE Letter to defendants Blackman and VICE Energy (<u>see</u> Exhibit I hereto), but they have refused to respond in any way, and Defendants continue to promote, advertise and market concerts, parties and special events using the VICE name and Mark (<u>see</u> Exhibit B).  In any event, the April 9, 2013 deadline has passed and Defendants have not responded in any way.  Thus, it is clear that Defendants have no intention to cease and desist from engaging in their infringing and otherwise wrongful use of the VICE name and VICE® Marks.

32.    Defendants' above-mentioned conduct is unauthorized and has caused actual confusion -- and if left unchecked will continue to cause confusion -- among consumers as to whether VICE, as opposed to Defendants, is promoting, marketing, advertising, producing, broadcasting or transmitting the concerts, parties, special events, programs or other entertainment media content, and whether or not same are being sponsored or endorsed by VICE, resulting in harm to VICE, as more fully set forth below.

FIRST CAUSE OF ACTION

(Federal Trademark Infringement, 15 U.S.C. § 1114)

33.    VICE repeats and realleges paragraphs 1 through 32 hereof as if fully set forth herein.

34.    Defendants' use of the VICE name and VICE® Mark in connection with promoting, advertising, marketing, producing, broadcasting and/or transmitting concerts, parties, special events, programs and/or entertainment media content is likely to cause and is causing

confusion, mistake and deception among consumers as to the origin or sponsorship of same, and is likely to deceive and has deceived the public into believing that said concerts, parties, special events, programs and/or entertainment media content emanate from, originate from, are associated with and/or are authorized or endorsed by VICE, all to the damage and detriment of VICE's reputation and goodwill.

35.     Defendants' aforesaid actions constitute infringement of the VICE® Mark in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

36.     Defendants' conduct as described above is done willfully with knowledge of and/or reckless disregard for VICE's rights.

37.     VICE's federal registration of the VICE® Mark is evidence of VICE's ownership of the mark and its validity.

38.     As a proximate result of Defendants' actions, VICE has suffered and will continue to suffer great damage to its business, goodwill, reputation, profits and strength of its trademark. The injury to VICE is and continues to be ongoing and irreparable.

39.     Upon information and belief, the foregoing acts of infringement have been and continue to be deliberate, willful and wanton, making this case exceptional within the meaning of the Lanham Act, 15 U.S.C. § 1117. An award of money damages alone cannot fully compensate VICE for its injuries and VICE lacks an adequate remedy at law.

40.     VICE is entitled to all remedies available under the Lanham Act, including but not limited to preliminary and permanent injunctions, compensatory damages, treble damages, disgorgement of profits, costs and attorneys' fees.

## SECOND CAUSE OF ACTION

### (Federal Unfair Competition/False Designation
of Origin, 15 U.S.C. § 1125(a))

41.     VICE repeats and realleges paragraphs 1 through 40 hereof as if fully set forth herein.

42.     Defendants' use of the VICE name and VICE® Mark in connection with promoting, advertising, marketing, producing, broadcasting or transmitting concerts, parties, special events, programs and/or entertainment media content falsely suggests to the general public the origin and source of same, and creates actual confusion and a likelihood of further confusion for consumers as to the source, sponsorship and endorsement or such concerts, parties, special events, programs and/or entertainment media content.

43.     Defendants' aforesaid unlawful and unauthorized use of the VICE® Mark creates the express or implied misrepresentation that the concerts, parties, special events, and/or entertainment media content are authorized, endorsed or approved by VICE when they are not.

44.     Upon information and belief, Defendants' conduct as described above has been done willfully with knowledge of and/or reckless disregard for VICE's rights.

45.     Defendants' aforesaid actions constitute false designation of origin and unfair competition in violation of VICE's rights under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1).

46.     As a proximate result of the acts of Defendants, as alleged herein, VICE has suffered, is suffering and will continue to suffer irreparable damage and, unless Defendants is restrained from continuing these wrongful acts, the damage to VICE will increase.

47.     VICE has no adequate remedy at law.

### THIRD CAUSE OF ACTION

(Federal Dilution, 15 U.S.C. § 1125(c))

48.     VICE repeats and realleges paragraphs 1 through 47 hereof as if fully set forth herein.

49.     As more fully set forth above in paragraphs 18-25, the VICE® Mark is both "famous" and "distinctive" within the meaning of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)(1), and have been a famous and distinctive mark prior to Defendants' wrongful use of the Mark and since at least 2002, and perhaps as early as 1997. As set forth in paragraphs 18-25, supra, there is a powerful consumer association with the VICE® Mark.

50.     Defendants' wrongful use of the VICE® Mark as set forth herein dilutes the distinctive quality of the VICE® Mark, and, upon information and belief, is being done with the willful intent to trade on VICE's reputation and goodwill and/or to cause dilution of said trademarks.

51.     Defendants' aforesaid use of the VICE name and VICE® Mark was done with notice and full knowledge that such use was not authorized or licensed by VICE.

52.     Defendants' aforesaid acts are in knowing and willful violation of VICE's rights under section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

53.     As a result of Defendants' aforesaid conduct, VICE has suffered irreparable injury to the extent it has: (a) lost the right to control the commercial and trade use of its trademarks; (b) lost earnings as a result of diverted customers and (c) suffered damage to its reputation and goodwill. Unless Defendants are preliminarily and permanently enjoined from such conduct, VICE will continue to suffer such irreparable injury to its goodwill and reputation. VICE has no adequate remedy at law.

{N0339736; 3}                               - 13 -

## FOURTH CAUSE OF ACTION

### (Common Law Trademark Infringement)

54.     VICE repeats and realleges paragraphs 1 through 53 as if fully set forth herein.

55.     By reason of Defendants' actions alleged herein, VICE has suffered, and will continue to suffer, irreparable injury to its rights and suffer substantial loss of goodwill, reputation and loss of value in the VICE® Mark, unless and until Defendants are enjoined from continuing their wrongful acts.

56.     By reason of Defendants' actions alleged herein, VICE has been damaged in an amount not presently ascertained, and such damage will continue and increase unless and until Defendants are enjoined from continuing their wrongful acts.

57.     Defendants' conduct in this cause of action is willful, wanton, malicious, oppressive, and in conscious disregard of VICE's rights in its VICE® Mark, justifying the imposition of punitive and exemplary damages.

## FIFTH CAUSE OF ACTION

### (Trademark Dilution, NY GBL §360-l)

58.     VICE repeats and realleges paragraphs 1 through 57 as if fully set forth herein.

59.     The VICE® Mark is a valid trademark at common law.

60.     Defendants' aforesaid acts of infringement, imitation, deception and misrepresentation dilute and/or create a likelihood of dilution of the distinctive quality of the VICE® Mark, in violation of New York General Business Law § 360-l.

61.     Defendants' aforesaid use of the VICE® Mark is willful and intentional, causing VICE monetary damage and irreparable harm and resulting in Defendants' enrichment.

{N0339736; 3}                                    - 14 -

62.     If the aforesaid acts are permitted to continue, VICE will sustain further loss, damage, and irreparable injury, for which VICE has no adequate remedy at law.

### SIXTH CAUSE OF ACTION

### (Unfair Competition)

63.     VICE repeats and realleges paragraphs 1 through 62 as if fully set forth herein.

64.     VICE has developed valuable goodwill in the VICE® Mark.

65.     Defendants' knowing and willful unauthorized use of the VICE name and Mark have permitted Defendants to palm off their services to the general public as those of VICE, all to the detriment of VICE and the unjust enrichment of Defendants.

66.     Defendants have knowingly and willfully traded on the goodwill associated with the VICE® Mark and have misled the public into assuming a connection between the concerts, parties, special events, programs and/or entertainment media content of VICE and those of Defendants.

67.     Defendants have misappropriated and used the VICE® Mark without VICE's authorization and in competition with VICE.

68.     Defendants' actions, which have caused confusion, have misled and deceived the public as to the source of Defendants' concerts, parties, special events, programs an/or entertainment media content, and have permitted and accomplished the palming off of same as VICE's, and have falsely suggested a connection between the two, all of which constitutes unfair competition in violation of New York common law.

69.     As a result of Defendants' aforesaid conduct, VICE has suffered irreparable injury to the extent that it has: (a) lost the right to control the commercial and trade use of the VICE® Mark; (b) lost earnings as a result of diverted revenues or customers; and (c)

suffered damage to its reputation and goodwill. Unless Defendants are preliminarily and permanently enjoined from such conduct, VICE will continue to suffer such irreparable injury to its goodwill and reputation.

      70.    VICE has no adequate remedy at law.

Prayer for Relief

WHEREFORE, VICE respectfully prays that this Court:

      a.    Adjudge that the VICE® Mark has been infringed as a direct and proximate result of the willful acts of Defendants as set forth in this Complaint, in violation of VICE's rights under section 32 of the Lanham Act, 15 U.S.C. § 1114(a), Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and under New York common and statutory law;

      b.    Adjudge that the VICE® Mark has been diluted as a direct and proximate result of the willful acts of Defendants as set forth in this Complaint, in violation of VICE's rights under section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), and under New York common and statutory law;

      c.    Issue a judgment and/or an order preliminarily and permanently restraining, enjoining, and prohibiting Defendants and their agents, servants, employees, officers, successors and assigns, and all persons, firms and corporations acting in concert or participation with Defendants or on Defendants' behalf, from:

          (i)    Using the VICE name or VICE® Mark in connection with promoting, advertising, marketing, producing, broadcasting and/or transmitting concerts, parties, special events, programs and/or entertainment media content;

          (ii)    Using the VICE name or VICE® Mark in connection with any website, domain name, Facebook page, Twitter ID, or any other online transmission or posting, including but not limited to the domain name viceproductions.net;

(iii)    Using any trademark, service mark, logo, design or trade name that falsely represents or has the effect of falsely representing that any concerts, parties, special events, programs and/or entertainment media content being promoted, advertised, marketed, produced, broadcasted, transmitted by Defendants are sponsored by, authorized by, or in any way associated with VICE;

(iv)    Infringing the VICE® Mark;

(v)     Diluting VICE® Mark;

(vi)    Falsely representing itself as being associated with or sponsored by VICE, or engaging in any act which is likely to cause members of the public to falsely believe that Defendants are associated with VICE or that VICE is associated with Defendants and/or the concerts, parties, special events, programs and/or entertainment media content being promoted, advertised, marketed, produced, broadcasted or transmitted by Defendants;

(vii)   Doing any other act or thing likely to cause the public or others to believe that there is any connection between Defendants and VICE.

d.      Award VICE any additional injunctive relief not specified above as provided for in § 34 of the Lanham Act, 15 U.S.C. § 1116;

e.      Award VICE damages in an amount to be determined at trial but equal to treble the greater of Defendants' profits or VICE's actual damages, or in the alternative statutory damages, plus pre-judgment and post-judgment interest, costs and attorneys' fees, pursuant to VICE's claims for trademark infringement, unfair competition and trademark dilution under the Lanham Act, 15 U.S.C. § 1117 and New York common and statutory law;

f.      Award VICE punitive or exemplary damages for Defendants' knowing, willful and intentional violation of VICE's rights under New York law;

g.      Award VICE such sums as are necessary to place or compensate VICE for corrective advertising;

h.      Order Defendants to transfer any and all domain names, Twitter IDs, Facebook names and/or other websites using the VICE name or VICE® Mark to VICE; and

      i.      Grant VICE such other and further relief as this Court deems to be just and

proper.

Dated: New York, New York
       April 16, 2013

                          SULLIVAN & WORCESTER LLP

                          By: _____
                              Gerry Silver, Esq.
                              1633 Broadway
                              New York, NY  10019
                              (T) (212) 660-3096
                              (F) (212) 660-3001
                              gerry.silver@sandw.com

                              Kimberly B. Herman, Esq.
                              SULLIVAN & WORCESTER LLP
                              One Post Office Square
                              Boston, MA 02109
                              (T) (617) 338-2943
                              (F) (617) 338-2880
                              kherman@sandw.com

                              Attorneys for Plaintiffs